1
2
3
4
5
6
7
8
9
10
11
12

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION**

| | | |
|---|---|---|
| DIAHANNA C. WILLIAMS, | ) | Case No. ED CV 15-01678-AS |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM OPINION AND** |
| | ) | |
| v. | ) | **ORDER OF REMAND** |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

13
14
15
16
17
18
19

Pursuant to Sentence 4 of 42 U.S.C. § 405(g), IT IS HEREBY ORDERED that this matter is remanded for further administrative action consistent with this Opinion.

**PROCEEDINGS**

On August 20, 2015, Plaintiff filed a Complaint seeking review of the denial of her application for Disability Insurance Benefits. (Docket Entry No. 1).  The parties have consented to proceed before the undersigned United States Magistrate Judge.  (Docket Entry Nos. 8, 10).

On December 28, 2015, Defendant filed an Answer along with the Administrative Record ("AR"). (Docket Entry Nos. 13-14). The parties filed a Joint Position Statement ("Joint Stip.") on March 28, 2016, setting forth their respective positions regarding Plaintiff's claims. (Docket Entry No. 17).

The Court has taken this matter under submission without oral argument. <u>See</u> C.D. Cal. L.R. 7-15; "Order Re: Procedures In Social Security Case," filed August 25, 2015 (Docket Entry No. 7).

### BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

Plaintiff, formerly employed as a laboratory technician for a mechanical assembly business (<u>see</u> AR 28, 169), filed an application for Disability Insurance Benefits on March 20, 2012, alleging a disability since June 16, 2011. (<u>See</u> AR 151-54). On November 25, 2013, the Administrative Law Judge ("ALJ"), Mark Greenberg, heard testimony from Plaintiff and vocational expert Luis Mas. (<u>See</u> AR 27-51). On February 20, 2014, the ALJ issued a decision denying Plaintiff's application. (<u>See</u> AR 11-21). After determining that Plaintiff had severe impairments -- "rheumatoid arthritis; obesity; and musculoligamentous strain" (AR 13)[1] --, the ALJ found that Plaintiff had the residual functional

---

[1]    The ALJ found that Plaintiff's other impairments -- headaches, hallux valgus deformities, and depression -- were non-severe. (<u>See</u> AR 13-15). The ALJ further found that Plaintiff did not have medically determinable carpal tunnel syndrome, fibromyalgia, or diabetes mellitus. (<u>See</u> AR 15).

1  capacity ("RFC")[2] to perform light work[3] with the limitations of no more
2  than frequent postural activities and no more than frequent reaching,
3  fine manipulation and gross manipulation.  (AR 15-19).  The ALJ then
4  determined that Plaintiff was unable to perform any past relevant work
5  (AR 19), but that jobs existed in significant numbers in the national
6  economy that Plaintiff can perform, and therefore found that Plaintiff
7  was not disabled within the meaning of the Social Security Act.  (AR 20-
8  21).

10     Plaintiff requested that the Appeals Council review the ALJ's
11 decision.  (AR 5).  The request was denied on June 22, 2015.  (AR 1-3).
12 The ALJ's decision then became the final decision of the Commissioner,
13 allowing this Court to review the decision.  See 42 U.S.C. §§ 405(g),
14 1383(c).

16                        **PLAINTIFF'S CONTENTIONS**

18     Plaintiff alleges that the ALJ erred in failing to properly
19 consider: (1) the opinions of Plaintiff's treating physicians and one
20 consultative examiner; (2) Plaintiff's subjective complaints and assess
21 her credibility; and (3) the vocational expert's testimony.  (See Joint
22 Stip. at 3-11, 18-22, 25-28).

25     [2]   A Residual Functional Capacity is what a claimant can still do
26 despite existing exertional and nonexertional limitations.   See 20
   C.F.R. § 404.1545(a)(1).

27     [3]   "Light work involves lifting no more than 20 pounds at a time
28 with frequent lifting or carrying of objects weighing up to 10 pounds."
   20 C.F.R. § 404.1567(b).

**DISCUSSION**

After consideration of the record as a whole, the Court finds that Plaintiff's second claim of error warrants a remand for further consideration.   Since the Court is remanding the matter based on Plaintiff's second claim of error, the Court will not address Plaintiff's first and third claims of error.

**A.    The ALJ Did Not Properly Assess Plaintiff's Credibility**

Plaintiff asserts that the ALJ failed to provide legitimate reasons for finding Plaintiff not credible. (See Joint Stip. at 18-22). Defendant asserts that the ALJ properly found Plaintiff not fully credible. (See Joint Stip. at 22-24).

Plaintiff made the following statements in a "Function Report – Adult" dated May 25, 2012 (see AR 182-89):

> She lives in a house with family.  Her day consists of taking care of her personal care, dressing, eating, taking pills, taking children to school, coming home, cleaning her house, maybe doing laundry, picking up children at school, fixing dinner, cleaning the kitchen, watching television, and getting ready for bed.  She takes care of her husband (feeds) and her children (feeds and takes to school).  She takes care of a dog (feeds and limited walks), with the help of her children.  As a result of her condition, she no longer walks far, goes outdoors as much, or makes different kinds of meals.

Her sleep is affected because of her condition (she sometimes feels too much pain).  She has no problem bathing, caring for her hair, shaving, self-feeding and using the toilet.  She needs reminders to take a shower, but does not need reminders to take medicine.  She prepares some breakfasts and dinners daily (meals take her more than 2 hours, and everything needs to be easily opened), with some help.  As a result of her condition, she cannot open jars or use the knife well.  She cleans and does laundry, both with help, and irons (such activities take her the whole day).  (<u>See</u> AR 182-85).

She goes outside daily, and can go out alone.  She drives a car.  She shops for food at the grocery store twice a week for approximately 1 to 1 1/2 hours.  She only goes out to drop her children off at school on a regular basis.  (<u>See</u> AR 185-186).

She can pay bills, count change, handle a savings account and use a checkbook/money orders.  (<u>See</u> AR 185).

She sews twice a week for approximately 2 hours, if she is not in pain.  Some of the sewing tools are small and hard to hold (which causes her pain).  She also reads and watches television.  She does not spend social time with others.  She does not have any problems getting along with family, friends, neighbors, or others. (<u>See</u> AR 186-87).

Her conditions affects her ability to lift (she can lift about 20 pounds), squat (her legs and back start to hurt), bend, stand (her legs and back start to hurt), walk (her back starts to hurt), sit, kneel (her legs and back start to hurt), climb stairs (her legs and back start to hurt), concentrate and use her hands (her hands get stiff, lock, and swell). She can walk for 5 minutes before she needs to rest; she can resume walking after about 2 minutes or until the pain stops. She does not finish what she starts. She follows written instructions well, but spoken instructions may have to be repeated. (See AR 187).

She gets along okay with authority figures, and has never been fired or laid off from a job because of problems getting along with other people. She handles stress okay. She handles changes in her routine okay, but might have to breathe deeply for a while. She fears being in pain all the time and that her body will stop working. (See AR 188).

She uses a brace (prescribed in 2003) and glasses (prescribed in high school). She uses the brace when she feels her hands start to hurt (which happens once a month and lasts 1 to 2 weeks). (See id.).

Plaintiff testified at the administrative hearing as follows (see AR 28-41):

6

She is married and has two daughters, ages 18 and 21. She completed one year of college. She worked as a laboratory technician until June 2009, when was laid off. At that time, she was doing mechanical work (using her hands the whole time), such as putting parts together, making harnesses, building boxes, soldering, using a microscope, and lifting power boxes. (See AR 28, 37-39, 41).

Since June 16, 2011 (her alleged disability onset date), her condition has changed -- she has more pain, stiffness, swelling, and is unable to stand or sit for a long time. She cannot work as a laboratory technician because of difficulties with standing, sitting, and working with her hands. She cannot work at a desk job because of the prolonged sitting, the prolonged standing, and the use of her hands, even if she were allowed to get up and stretch every 30 minutes for 1 to 2 minutes, and even if she were allowed to alternately sit and stand and to lie down for 10 to 15 minutes 3 times a day. (See AR 29, 32, 34-35).

She can sit comfortably for 30 minutes. She can stand comfortably for 10 to 20 minutes. She does not know whether she could alternate between sitting and standing during an 8-hour workday, since she has good days and bad days. She can stand for about 30 minutes on a good day and for about 5 to 10 minutes on a bad day. Her hands hurt and swell when she holds things for too long or uses them too much. She can lift and carry about a gallon of milk, but not with both hands. She

7

lies down in a recliner 5 to 6 times a day for about an hour (to relieve the pressure on her back and legs). She has swelling in her ankles and knees. Her headaches have gotten better the past year; she has headaches about 2 times a month. Her problems with depression and concentration/focus have stayed the same for the last two years.(See AR 29-30, 32, 35, 39-40).

Her pain is constant and throbbing. She takes medication for the pain in her hands. She has suffered dizziness and sometimes headaches from the medication, but no serious side effects. She has been on and off steroids a number of times. She takes Tylenol for her headaches. (See AR 30, 35-37).

She does not need assistance with bathing or doing her hair. She can dress herself, but she sometimes needs help buttoning or zipping up her clothes if her hands are not working. On a good day she is able to vacuum and do the laundry (she throws clothes in the washing machine and lets her children do the rest). She is not able to grasp objects like cups (they sometimes fall out of her hands). She does not cook because she cannot stand for a long time. She does not type on a computer. She uses a cellular phone, but can only text about 2 to 3 words. Her husband and younger daughter help her do things around the house. Since 2011/2012, she can no longer walk or do any hobbies. (See AR 30-32, 41).

8

Her doctors tell her that her condition is going to get worse, and that she might become totally deformed in her hands. (See AR 33).

After summarizing Plaintiff's testimony at the hearing (see AR 16), the ALJ addressed Plaintiff's credibility as follows:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision. The claimant's allegations regarding the severity of her symptoms and limitations are greater than expected in light of the objective evidence, treatment history, medical opinion and the overall record. The evidence reflects that the claimant's cessation of employment was related to down-sizing by her employer, rather than on account of the allegedly disabling impairments (Ex 2E pg 2). There is no evidence of a significant deterioration in the claimant's medical condition since the apparent lay-off. The claimant's symptoms, episodic in nature, reportedly extend as far back as 1997 (Ex 1F pg 54).
>
> The claimant's testimony and descriptions of her activities differ from that previously expressed in the record. For example, in her function report, the claimant

described her daily activities to include taking her children to and from school, cleaning the house, doing some laundry and ironing (Ex 4E pg 1). She conveyed having no problems in attending to self-care for activities such as dressing. She prepared meals with help on a daily basis, taking 2 plus hours to do so. She shopped for groceries twice a week for 1 to 1 1/2 hours at a time. The claimant reportedly enjoyed sewing twice a week for a couple of hours if not having pain. She felt capable of lifting about 20 pounds.

(AR 16-17).

A claimant initially must produce objective medical evidence establishing a medical impairment reasonably likely to be the cause of the subjective symptoms. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991). Once a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged, and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her pain and symptoms only by articulating specific, clear and convincing reasons for doing so. Brown-Hunter v. Colvin, 798 F.3d 749, 755 (9th Cir. 2015)(citing Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)); see also Smolen v. Chater, supra; Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). Because the ALJ does not cite to any evidence in the record of malingering, the "clear and convincing" standard stated above applies.

1    Here, the ALJ failed to provide clear and convincing reasons for
2    finding that Plaintiff's testimony about the intensity, persistence and
3    limiting effects of her symptoms was not fully credible.[4]

4

5    First, the ALJ failed to "specifically identify 'what testimony is
6    not credible and what evidence undermines [Plaintiff's] complaints.'"
7    Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007) (quoting Lester v.
8    Chater, 81 F.3d 821, 834 (9th Cir. 1995)); see also Smolen v. Chater,
9    supra, 80 F.3d at 1284 ("The ALJ must state specifically what symptom
10   testimony is not credible and what facts in the record lead to that
11   conclusion").

12

13   Second, to the extent that the ALJ partially discredited
14   Plaintiff's credibility because she stopped working in June 2009 based
15   on down-sizing by her employer (and not based on her medical
16   impairments), that reason was improper.  Plaintiff did not allege she
17   suffered a disabling condition that prevented her from working in June
18   2009; rather, Plaintiff alleged a disabling condition, beginning on June
19   16, 2011, that prevented her from working (see AR 168).  Moreover, there
20   is no indication that Plaintiff gave anybody false information about why
21   she left her employment.  See Bruton v. Massanari, 268 F.3d 824, 828
22   (9th Cir. 2001) (finding that the ALJ's reliance, in part, on the
23   plaintiff's false statements at the administrative hearing and to a
24   doctor that "he left his job because he was laid off" [rather than
25   because he was injured] was a sufficient basis for discrediting the

26

27   [4]    The Court will not consider reasons for finding Plaintiff not
     fully credible (see Joint Stip. at 24) that were not given by the ALJ in
28   the Decision.  See Pinto v. Massanari, 249 F.3d 840, 847-48 (9th Cir.
     2001); SEC v. Chenery Corp., 332 U.S. 194, 196 (1947).

1  plaintiff's testimony). Moreover, the ALJ has not specified how
2  Plaintiff being laid off in June 2009 affected her credibility.
3  Therefore, the fact that Plaintiff was laid off in June 2009 was not
4  relevant to the issue of Plaintiff's credibility.

5

6      Third, the ALJ's partial discrediting of Plaintiff's credibility
7  based on allegedly different statements made by Plaintiff about her
8  ability to perform certain daily activities was improper.[5] Although
9  inconsistencies in testimony may be considered in weighing a claimant's
10 testimony, see Light v. Social Security Admin., 119 F.3d 789, 792 (9th
11 Cir. 1997), here, Plaintiff's testimony at the November 25, 2013
12 administrative hearing about her ability to perform certain daily
13 activities was not necessarily inconsistent with the statements she made
14 in her May 25, 2012 Function Report about her ability to perform certain
15 daily activities. The Function Report was prepared one and one-half
16 years prior to the administrative hearing. At the administrative
17 hearing, Plaintiff testified that her condition had gotten worse since
18 June 16, 2011 (the alleged disability onset date), and that her
19 condition was continuing to worsen (as her doctors had told her). (See
20 AR 28-29, 33). Moreover, since Plaintiff stated in her Function Report
21 that she was able to perform certain daily activities (i.e., feeding the
22 dog, preparing meals, laundry, cleaning) or to engage in hobbies
23 (sewing) *only if she had help from her children or if she was not in*
24 *pain* (see AR 183-84, 186)(emphasis added), Plaintiff's statements in her
25 Function Report were not necessarily inconsistent with her testimony at
26 the administrative hearing. In addition, to the extent that the ALJ may

27 _____

28     [5]   The Court notes that Defendant did not even address that
   reason.

                                    12

have partially discredited Plaintiff's testimony based on her ability to perform certain daily activities, such as taking her children to and from school, cleaning the house, doing some laundry, ironing, dressing, preparing meals, shopping for groceries, and sewing, that reason was not clear and convincing. See Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("[T]he mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability.  One does not need to be 'utterly incapacitated' in order to be disabled."); Reddick v. Chater, supra ("Only if the level of activity were inconsistent with the Claimant's claimed limitations would these activities have any bearing on Claimant's credibility.").

Fourth, although the ALJ also found that there was a lack of objective medical evidence supporting Plaintiff's testimony concerning her symptoms and limitations, the lack of supporting objective medical evidence cannot, by itself, support an adverse credibility finding.  See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998).

**B.    Remand Is Warranted**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  Id. at 1179

13

("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where, as here, the circumstances of the case suggest that further administrative review could remedy the Commissioner's errors, remand is appropriate. <u>McLeod v. Astrue</u>, 640 F.3d 881, 888 (9th Cir. 2011); <u>Harman v. Apfel</u>, <u>supra</u>, 211 F.3d at 1179-81.

Since the ALJ failed to properly assess Plaintiff's credibility, remand is appropriate. Because outstanding issues must be resolved before a determination of disability can be made, and "when the record as a whole creates serious doubt as to whether the [Plaintiff] is, in fact, disabled within the meaning of the Social Security Act," further administrative proceedings would serve a useful purpose and remedy defects. <u>Burrell v. Colvin</u>, 775 F.3d 1133, 1141 (9th Cir. 2014)(citations omitted).[6]

//

//

//

---

[6] With the exception of the denial of Plaintiff's claim regarding the ALJ's consideration of anemia evidence, the Court has not reached any other issue raised by Plaintiff except insofar as to determine that reversal with a directive for the immediate payment of benefits would not be appropriate at this time. "[E]valuation of the record as a whole creates serious doubt that Plaintiff is in fact disabled." <u>See</u> <u>Garrison v. Colvin</u>, 759 F.3d 995, 1021 (2014). Accordingly, the Court declines to rule on Plaintiff's claims regarding the ALJ's failure to properly consider the opinions of Plaintiff's treating physicians and one consultative examiner (<u>see</u> Joint Stip. at 18-22) and the ALJ's failure to properly consider the vocational expert's testimony (<u>see</u> Joint Stip. at 25-28). Because this matter is being remanded for further consideration, these issues should also be considered on remand.

**ORDER**


    For the foregoing reasons, the decision of the Commissioner is reversed, and the matter is remanded for further proceedings pursuant to Sentence 4 of 42 U.S.C. § 405(g).


    LET JUDGMENT BE ENTERED ACCORDINGLY.


DATED: July 28, 2016

                                      /s/
                                  ALKA SAGAR
                  UNITED STATES MAGISTRATE JUDGE